**UNITED STATES DISTRICT COURT**
**IN THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DAVID M. REES and** | ) | |
| **WENDY REES,** | ) | |
| | ) | C.A. No. 2:14-cv-12401-GCS-RSW |
| | ) | |
| Plaintiffs, | ) | Hon. George Caram Steeh |
| | ) | |
| v. | ) | |
| | ) | |
| BOARD OF TRUSTEES OF | ) | |
| IRON WORKERS' LOCAL NO. 25 | ) | |
| FRINGE BENEFIT FUNDS; BOARD OF | ) | |
| TRUSTEES OF IRON WORKERS' | ) | |
| LOCAL NO. 25 PENSION FUND; BOARD | ) | |
| OF TRUSTEES OF IRON WORKERS' | ) | |
| LOCAL NO. 25 PENSION PLAN, | ) | |
| JACK O'DONNELL, in his capacity as | ) | |
| Business Manager for Iron Workers' | ) | |
| Local No. 25 and Board Union Trustee; | ) | **PLAINTIFFS' SECOND** |
| PATRICK BUCK, in his capacity as | ) | **AMENDED COMPLAINT** |
| Business Agent for Iron Workers' Local | ) | |
| Workers' Local No. 25 and Board Union | ) | |
| Trustee; STEVEN N. GULICK, in his | ) | |
| capacity as Recording Secretary for | ) | |
| Iron Workers Local No. 25 and as Board | ) | |
| Union Trustee; JAMES BUZZIE, | ) | |
| in his capacity as Board Employer Trustee; | ) | |
| PATRICK BAKER in his capacity as Board | ) | |
| Employer Trustee; JOHN RIECKHOFF, | ) | |
| in his capacity as Board Employer Trustee; | ) | |
| FRANK NEHR JR. in his capacity as former | ) | |
| Board Employer Trustee; PATRICK | ) | |
| DIMET, in his capacity as former Board | ) | |
| Employer Trustee; DENNIS C. KRAMER, | ) | |
| in his capacity as Fund Administrator, | ) | |
| IRON WORKERS' LOCAL NO. 25 | ) | |
| PENSION PLAN; IRON WORKERS' | ) | |
| LOCAL NO. 25 FRINGE BENEFIT | ) | |
| FUNDS; METRO INDUSTRIAL | ) | |
| CONTRACTING, INC., and | ) | |
| JOHN DOES NOS. 1-20, | ) | |
| | ) | |
| Defendants. | ) | |
| | / | |

Plaintiffs DAVID M. REES and WENDY REES, through their undersigned counsel, STEVENSON KEPPELMAN ASSOCIATES, state for their First Amended Complaint against Defendants BOARD OF TRUSTEES OF IRON WORKERS' LOCAL NO. 25 FRINGE BENEFIT FUNDS ("Fringe Benefits Funds Board"), BOARD OF TRUSTEES OF IRON WORKERS' LOCAL NO. 25 PENSION FUND ("Pension Fund Board"), and the BOARD OF TRUSTEES OF IRON WORKERS' LOCAL NO. 25 PENSION PLAN ("Pension Plan Board") (collectively, the "Boards"); JACK O'DONNELL in his capacity as Business Manager for Iron Workers' Local No. 25 and Board Union Trustee ("O'Donnell"), PATRICK BUCK in his capacity as President and Business Agent for Iron Workers' Local No. 25 and Board Union Trustee ("Buck"), STEVEN N. GULICK in his capacity as Recording Secretary for Iron Workers' Local No. 25 and Board Union Trustee ("Gulick"), JAMES BUZZIE in his capacity as Board Employer Trustee ("Buzzie"), PATRICK BAKER in his capacity as Board Employer Trustee ("Baker"), JOHN RIECKHOFF in his capacity as Board Employer Trustee ("Rieckhoff"), FRANK NEHR JR. in his capacity as former Board Employer Trustee replacing deceased former Board Employer Trustee D. James Walker ("Nehr"), and PATRICK DIMET in his capacity as former Board Employer Trustee ("Dimet") (together with the other Trustees, "Defendant Trustees" or "Trustees"); Dennis C. Kramer in his capacity as Fund Administrator ("Kramer" or the "Fund Administrator"); the IRON WORKERS' LOCAL NO. 25 PENSION PLAN (the "Plan"); the IRON WORKERS' LOCAL NO. 25 FRINGE BENEFIT FUNDS (the "Funds"); METRO INDUSTRIAL CONTRACTING, INC. ("Metro" or the "Employer"); and JOHN DOES NOS. 1-20 (the "John Doe Defendants"), (collectively "Defendants"), as follows:

## **INTRODUCTION**

1.     This action arises under the Employee Retirement Income Security Act, 29 U.S.C.

§1001 *et seq.* ("ERISA") and under federal common-law and seeks restoration of pension benefits, a declaratory judgment approving such benefits as due and owing and declaring the purported overpayment of benefits null and void, and such other relief as this Court deems just and equitable under ERISA and federal common law against the Defendant Boards, the Defendant Trustees, the Plan, the Funds and/or the Employer.

2.      This action is taken, pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §2201,  and pursuant to ERISA and 28 U.S.C. §1331.

## PARTIES

3.      Plaintiffs David M. Rees ("Mr. Rees") and Wendy Rees reside in Grosse Ile, Michigan.

4.      At all times relevant hereto, Mr. Rees was an employee of Defendant Metro Industrial Contracting, Inc., whose offices are at 13040 Capital St., Oak Park, Michigan; and Defendant Metro made contributions on Mr. Rees's behalf to the Defendant Fringe Benefit Funds as a Contributing Employer under the Defendant Plan, and pursuant to collective bargaining agreements or other written instruments and agreements.

5.      At all times relevant hereto, Plaintiff David Rees was and is a participant of the Defendant Plan, and Plaintiff Wendy Rees was and is Mr. Rees's spouse and is thus a beneficiary under the Defendant Plan.

6.      The Defendant Fringe Benefit Funds and the Defendant Pension Fund ("the Defendant Funds") maintain offices located at 25130 Trans X Drive in Novi, Michigan (the "Funds' Offices").

7.      At all times relevant hereto, upon information and belief, the Defendant Boards, including the Defendant Board Trustees O'Donnell, Buck, Gulick, Buzzie, Baker, Rieckhoff, Nehr,

3

Baker and Dimet, and certain of the John Doe Defendants as predecessor or successor Board Trustees, met and meet from time to time at the Funds' Offices in order to administer the Defendant Funds, the Defendant Plan, and other fringe benefit plans of Iron Workers' Local No. 25.

8.      At all times relevant hereto, Defendant Kramer, the Fund Administrator, carried and carries out his duties and responsibilities of Fund and plan administration at the Funds' Offices.

9.      At all times relevant hereto, the Plan documents of the Defendant Pension Plan, the resolutions adopting the Plan and all amendments and all other documents relating to the Plan (including but not limited to any trust agreement or declaration of trust establishing or maintaining the Plan), and the minutes of the meetings of the Defendant Trustees and the Defendant Boards relating to the Funds and the Plan were and are maintained at the Funds' Offices.

10.     The individual Defendant Board Union Trustees (whether current or former trustees) and any John Doe Defendants as predecessor or successor Board Union Trustees are appointed by Iron Workers' Local Union No. 25; and the individual Defendant Board Employer Trustees (whether current or former trustees) and any John Doe Defendants as predecessor successor Board Employer Trustees are appointed by the Great Lakes Fabricators & Erectors Association.

11.     The Defendant Boards, the Defendant Trustees, the Defendant Fund Administrator and the John Doe Defendants serving as predecessor or successor Board Trustees and their respective agents and delegatees are fiduciaries under Section 3(21) (A) of ERISA, 29 U.S.C. §1002(21)(A), because each of these Defendants exerts discretionary management and control over the assets of the Defendant Funds and the Defendant Plan, and/or administers the Defendant Plan and its plan assets; or each of the Defendant Trustees no longer serving as trustees exerted such

discretionary management and control and/or administered such Plan and its assets at the time of the wrongful conduct alleged in Counts I-VII of this Amended Complaint.

12.     The relevant Defendant Plan, as amended and restated in 2010, and its predecessor and successor plans constitute a collectively bargained multiemployer defined benefit pension plan and "Taft-Hartley Plan" subject to the requirements of Section 302(c) of the Act, 29 U.S.C. §186(c) ("LMRA §302(c)").

13.     The Defendant Plan is also governed by plan documents and a separate Trust Agreement ("Trust Agreement").

## JURISDICTION AND VENUE

14.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. Section 1331 in that this matter involves original federal question subject matter jurisdiction arising under ERISA, including but not limited to ERISA §§204(g), 204(h), 305(e), 404(a), 502(a)(1)(B), 502(a)(2), 502(a)(3), 502(e) and 510.

15.     This Court has personal jurisdiction over each of the Defendants because each has committed the actions identified herein to cause harm within this judicial district; and because each has had such sustained, consistent and regular contacts with the region as to support the exercise of personal jurisdiction, jurisdiction is proper. In addition, the facts alleged herein support the exercise of personal jurisdiction over each of the Defendants.

16.     Venue is proper in this district, pursuant to 28 U.S.C. §1391 and 29 U.S.C. §1132(e), under ERISA's national venue provision and because the Funds and the Plan are administered in this judicial district and/or because a substantial part of the events or omissions giving rise to these ERISA claims and federal common-law claim occurred in this judicial district, including but not limited to the conduct of meetings (which the Defendant Trustees attended and

in which they participated) of the Defendant Boards as they administered the Defendant Funds and the Defendant Plan.

## **GENERAL ALLEGATIONS**

17.     At all times relevant hereto while making representations to Plaintiff David Rees relating to Mr. Rees's eligibility for a Special Retirement benefit, and while encouraging him to apply for benefits under the 2010 Plan, O'Donnell served as a Trustee of the Defendant Boards, the Defendant Funds and the Plan and as Business Manager of Iron Workers' Local No. 25.

18.     In June of 2012, after consultation with his treating physician, Mr. Rees met with Ed Buckle, then President and owner of Defendant Metro, to discuss his 30 years of service in order to be eligible for a Special Retirement benefit, effective October 1, 2012, under the 2010 Plan.

19.     Mr. Buckle contacted then Trustee O'Donnell, who requested a meeting with Mr. Buckle and Mr. Rees.

20.     On or around June 11, 2012, Trustee O'Donnell, who requested the meeting, met with Mr. Rees and Mr. Buckle (the "June Meeting"), at which meeting Mr. Rees indicated that he was committed to work for 870 hours beginning with the new plan year of May 1, 2012 and would retire October 1, 2012; however, because of Mr. Rees's medical condition, Trustee O'Donnell suggested that Mr. Rees could retire earlier because Mr. Rees had previously actually worked for hours for which he was entitled to payment but for which he not yet been paid, and further suggested that these "banked hours" actually worked be distributed among the months of May, June and July of 2012 so that Mr. Rees would be eligible to retire with a Special Retirement effective August 1, 2012.

21.     During the June Meeting, Mr. Buckle agreed on behalf of Metro as Mr. Rees's employer that these "banked hours" actually worked for which Mr. Rees was owed back pay would

be distributed during the months of May, June and July of 2012, including but not limited to hours that Mr. Rees had previously actually worked and to which he was entitled to payment, but for which Mr. Rees had agreed to delay payment at the request of his employer to assist with Metro's cash flow.

22.     Mr. Rees relied on the agreement with his employer and Trustee O'Donnell at the June Meeting that the hours he had actually worked and to which he was entitled to payment but for which he had not yet received back pay would be reported as hours actually worked for which he remained entitled to payment in May, June and July of 2012 so that he would fulfill all eligibility requirements for a Special Retirement benefit under the 2010 Plan, effective August 1, 2012.

23.     Mr. Rees also relied upon the representations of then Trustee O'Donnell, as a plan fiduciary, at the June Meeting and in subsequent conversations that the hours which he had previously actually worked and to which he was entitled to payment would, by agreement with his employer, be reported as hours actually worked to which he was entitled to back pay and would count as hours of service towards the 870 hours of service for the 2012 Plan year beginning on May 1, 2012 (the "2012 Plan Year").

24.     At the time of the June Meeting, upon information and belief, under the past practices of the Plan, the Defendant Boards and the Defendant Funds, other participants of the Plan had been allowed to receive hours of service under similar circumstances and were permitted to retire under the Plan with such hours counted towards the Plan's eligibility requirements for retirement.

25.      Had that agreement not been reached at the June Meeting among Trustee O'Donnell, Metro (as Mr. Rees's employer), and Mr. Rees regarding the crediting and sufficiency of those "banked hours" as back pay hours to be counted toward the eligibility requirements for his Special Retirement benefit, effective August 1, 2012, Mr. Rees would have continued to perform services for

Metro until he had reach 870 hours of service for the 2012 Plan Year.

26.     At the June Meeting, Trustee O'Donnell represented that he would apprise Fund Administrator Kramer of the agreement regarding Mr. Rees's back pay hours and encouraged Mr. Rees to begin the pension application process with the Executive Assistant to Fund Administrator Kramer; and in reliance upon that agreement and those representations by Trustee O'Donnell, Mr. Rees did so.

27.     Fund Administrator Kramer, through his Executive Assistant, confirmed the sufficiency and crediting of Mr. Rees's hours of service, including the above-described "banked hours" as provided in the agreement reached at the June Meeting, to permit Mr. Rees to retire with a Special Retirement benefit, as of August 1, 2012.

28.     Mr. Rees had also received an Administrator Pension Qualification Report from the Fund Administrator Kramer confirming that, without the above-described "banked hours," Mr. Rees would be able to retire with a Special Retirement benefit, effective October 1, 2012.

29.      In reliance upon then Trustee O'Donnell's representations and the agreement reached among Trustee O'Donnell, Metro and Mr. Rees regarding his "banked hours" at the June Meeting, and confirmed by Fund Administrator Kramer and Mr. Kramer's Executive Assistant, Mr. Rees changed his position and applied to retire with a Special Retirement benefit, effective August 1, 2012, so that, but for that agreement, Mr. Rees would have remained employed with Metro until September 30, 2012, and would have begun to draw down his Special Retirement benefit, effective October 1, 2012.

30.     Consistent with the agreement reached at the June Meeting, Metro submitted documentation of the additional hours of service which Mr. Rees had previously actually worked but for which Mr. Rees had agreed to defer payment, so that Mr. Rees would receive back pay to count

toward his hours of service in May, June and July of 2012 during the 2012 Plan Year.

31.     On information and belief, all contributions, insurance and taxes were paid on those additional hours of service.

32.     Mr. Rees's application for Special Retirement was approved by the Defendant Fund Administrator.

33.     In ratification of the agreement, Mr. Rees received his first pension check enclosed with an August 1, 2012 letter from the Fund Administrator.

34.     Not until shortly after Mr. Rees questioned some foreign investments made by the Defendant Funds, and not until after the 2012 Plan year ended, did the Defendant Fund Administrator inform Mr. Rees by letter in June of 2013 (the "June 2013 Letter") that the hours of service reported by Metro for the 2012 Plan year appeared "excessive."

35.     The summary plan description for the 2010 Plan indicated that any claim for retirement benefits should be reviewed and either granted or denied within no more than 90 days by the Defendant Fund Administrator.

36.      Despite the agreement pertaining to back pay reached at the June Meeting and despite the approval of Mr. Rees's pension benefit in 2012, the June 2013 Letter indicated for the first time that the Plan did not accept Metro's documentation of the "banked hours" even though Metro's payroll records were submitted a year earlier.

37.     The June 2013 Letter and two succeeding letters demanded additional records from Mr. Rees, who was retired, to prove the hours of service previously approved by Trustee O'Donnell and agreed to and documented by Mr. Buckle and previously confirmed by the Fund Administrator through his Executive Assistant and through his own approval of Mr. Rees's application for a Special Retirement effective August 1, 2012.

38.     Although retired, Mr. Rees responded with documentation as best he could, including his W-2 form and a list of the jobs, which Trustee O'Donnell suggested that he provide, at which the "banked hours" were actually worked.

39.     Trustee O'Donnell assured Mr. Rees that, upon his supplying such documentation, his pension benefit would not be suspended.

40.     Despite these assurances, the agreement reached at the June Meeting, the documentation submitted by Metro, and the prior confirmation of Mr. Rees's eligibility for a Special Retirement by the Fund Administrator, Mr. Rees's pension benefit was suspended, effective October 1, 2013, on the ground that he was not "eligible" to retire effective August 1, 2012; and he was notified that he would have to repay the "overpayment" of pension made to him.

41.     Mr. Rees protested the suspension of his pension and the demand for overpayment through the Plan's claims procedure, but his claim was initially denied.

42.     His appeal from that denial was also denied by letter dated December 23, 2013; and Mr. Rees has timely filed this action within the Plan's limitations period.

43.      Had the Defendant Fund Administrator not accepted the hours reported by Metro and/or had the Defendant Fund Administrator not confirmed Mr. Rees's eligibility for a Special Retirement effective August 1, 2012, Mr. Rees could have and would have returned to employment to complete the two months' worth of hours of service required for a Special Retirement before November 1, 2012.

44.     Not until Defendants mailed a written notice dated October 19, 2012 to plan participants did Defendants provide plan participants notice in writing that the Special Retirement benefit would be eliminated for all participants who were not in pay status prior to November 1, 2012; and not until December 12, 2012, did the Defendant Trustees adopt an amendment to the 2010

Plan, eliminating the Special Retirement for those who were not in pay status prior to November 1, 2012.

45.     The 2010 Plan, its predecessor, and the 2013 Plan, at all times relevant hereto, provided participants a minimum pension benefit in Section 5.1(e).

46.     Prior to revoking his Special Retirement in August of 2013, Defendants failed to pay Mr. Rees the minimum benefit provided in Section 5.1(e) of the 2010 Plan.

## COUNT I –
## CLAIM FOR BENEFITS DUE UNDER ERISA §502(a)(1)(B)
## AGAINST ALL DEFENDANTS EXCEPT METRO

47.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if set forth  fully herein.

48.     ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), provides that participants or beneficiaries may bring a civil action to recover benefits due under the terms of their benefit plan.

49.     When Mr. Rees separated from service with Metro, Section 4.7 of the June 2010 Plan conferred a Special Retirement for participants with thirty (30) years of service, and Section 5.1(e) of the June 2010 Plan provided for a minimum benefit accrued as of September 30, 2003, notwithstanding any other provision of the Plan.

50.     Mr. Rees relied upon the agreement of Metro and Trustee O'Donnell, in accordance with these Defendants' past practices under the Plan, that in addition to hours that he worked within May, June and July of 2012 he was also accorded hours of service for "banked hours" for which he was owed back pay by agreement of his employer, so that he had accumulated 1008 hours of service during the 2012 Plan Year by July 30, 2012.

51.     Mr. Rees also relied upon the confirmation of his eligibility for a Special Retirement

effective August 1, 2012 by the Defendant Fund Administrator's Executive Assistant and upon the August 1, 2012 letter of the Defendant Fund Administrator approving his Special Retirement and enclosing his monthly pension check.

52.     These Defendants' past practice was to grant pension benefits based upon similar agreements relating to hours of service, and that past practice modified any terms of the 2010 Plan to the contrary.

53.     These Defendants acted contrary to the terms of the Plan in repudiating the agreement relating to Mr. Rees awarding him Special Retirement benefits, effective August 1, 2012; in failing to notify him of his purported ineligibility for Special Retirement benefits until after the close of the 2012 Plan year, when he could no longer earn hours of service during the 2012 Plan year; and in reversing the prior eligibility determination, suspending his benefits, and demanding that the benefit "overpayment" be repaid to the Plan.

54.     These Defendants also acted contrary to the terms of the Plan by miscalculating Mr. Rees's pension benefit without applying the minimum benefit provision in Section 5.1(e) of the Plan.

WHEREFORE, pursuant to ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), Plaintiffs request that this Honorable Court enter Judgment in favor of Plaintiffs on this claim for benefits due and enter an Order **a)** directing Defendants to reinstate Mr. Rees's Special Retirement benefit effective August 1, 2012 at the proper amount of benefit, including any applicable minimum benefit; **b)** estopping Defendants from enforcing any terms of the Plan to the contrary; **c)** finding that Plaintiffs do not owe any repayment of benefits in any amount to the Plan; and **d)** awarding Plaintiffs their costs, expenses and reasonable attorneys' fees pursuant to ERISA §502(g), 29 U.S.C. §1132(g), and such other relief as this Court may deem equitable, just and fair.

**COUNT II –**
**FAILURE TO COMPLY WITH NOTICE REQUIREMENTS UNDER ERISA**
**§§204(h) & 305(e)(8)(C) AGAINST ALL DEFENDANTS EXCEPT METRO**

55.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if set forth  fully herein.

56.     ERISA §204(h), 29 U.S.C. §1054(h), and its applicable Treasury regulations, prohibit amendment of subsidized early retirement benefits, including so-called "adjustable benefits," without prior sufficient and timely notice.

57.     ERISA §305(e)(8)(C), 29 U.S.C. §1085(e)(8)(C), and its applicable Treasury regulations prohibit a reduction in "adjustable benefits" as provided under the Pension Protection Act for multiemployer plans unless the notice has been issued 30 days before the date upon which the reduction or elimination of "adjustable benefits" is to take effect.

58.     The written notice to participants, dated October 19, 2012, was not only insufficient on its face to fulfill the requirements for the substantive content of such a notice of ERISA §§204(h) and/or 305(e)(8)(C), but it was also untimely, for it issued less than 15 days before the date upon which the elimination of "adjustable benefits" was to take effect, *i.e.,* the "operational effective date," including but not limited to the Special Retirement benefit denied to Mr. Rees.

59.     The written notice, mailed on a Friday, was also not reasonably calculated to reach participants more than 15 days prior to the attempted elimination of the "adjustable benefits."

60.     The amendment to the Plan eliminating such benefits was not adopted, on information and belief, until December 12, 2012, and was thus an impermissible retroactive attempt to amend a multiemployer plan without timely and sufficient notice, in violation of ERISA §305(e)(8)(C), 29 U.S.C. §1085(e)(8)(C).

61.     Under such circumstances of insufficient and untimely notice and/or untimely and

purportedly retroactive amendment, ERISA precludes the reduction or elimination of "adjustable benefits," including the subsidized Special Retirement denied to Mr. Rees.

62.     Pursuant to ERISA§502(a)(3), Plaintiffs are entitled to appropriate equitable relief to redress Defendants' violation of ERISA §§204(h) and 305(e)(8)(C).

WHEREFORE, pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), Plaintiffs request that this Honorable Court enter Judgment in favor of Plaintiffs on this claim for violation of the notice provisions for reduction or elimination of "adjustable benefits" in ERISA §§204(h) and/or 305(e)(8)(C) and enter an Order **a)** declaring the amendment null and void and unenforceable as to all affected Plan participants, including but not limited to Mr. Rees; **b)** reinstating Mr. Rees's Special Retirement benefit in an amount consistent with Section 5.1(e) of the June 2010 Plan, effective August 1, 2012, together with interest thereon; **c)** estopping Defendants from enforcing any terms of the Plan to the contrary; **d)** declaring that Plaintiffs and all other affected Plan participants do not owe any repayment of benefits in any amount to the Plan; **e)** awarding Plaintiffs their costs, expenses and reasonable attorneys' fees pursuant to ERISA §502(g), 29 U.S.C. §1132(g); and **f)** awarding such other relief, including such "other appropriate equitable relief" as provided for under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), as this Court may deem equitable, just and fair.

### COUNT III –
### CLAIM FOR BREACH OF ERISA FIDUCIARY DUTIES
### IN VIOLATION OF ERISA §§502(a)(2) AND/OR (3)
### AGAINST ALL DEFENDANTS EXCEPT THE PLAN AND METRO

63.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if set forth fully herein.

64.     At all relevant times hereto, the Defendant Boards, the Defendant Trustees, the Defendant Fund Administrator, the John Doe Defendants who are former or successor Board

trustees, and their agents and delegatees, are and were ERISA fiduciaries of the Plan and Funds, as provided in the Trust Agreement and the Plan documents, and/or are *de facto* ERISA fiduciaries within the meaning of 29 U.S.C. §1002(21)(A) because they exercised discretionary authority or control respecting management and/or administration of the Plans and Funds and/or because they exercised authority or control respecting management and disposition of the plan assets of the Plans and Funds.

65.    As ERISA fiduciaries, these Defendants owe fiduciary duties under ERISA §§404 and 409(a), 29 U.S.C. 1104 and 1109(a), to participants and beneficiaries of the plans funded by the Defendant Fringe Benefit Funds they administer, including but not limited to the duties of operating and managing the Funds for the exclusive benefit of participants and beneficiaries and with undivided loyalty to those participants and beneficiaries, the duty to act without conflict of interest in attempting to minimize their own personal risk for investment losses (including but not limited to high risk foreign investment), the duty to hire non-conflicted investment advisers, the duty to administer the ERISA plan documents in accordance with their terms unless they violate ERISA and/or other law, and the duty of disclosure to participants such as Plaintiffs.

66.    These fiduciary duties are enforceable under ERISA §502(a)(2) and/or (3), 29 U.S.C. §§1132(a)(2) and/or (3), by Plaintiffs, who are participants and/or beneficiaries under the Plan.

67.    As ERISA fiduciaries, these Defendants both determine eligibility for benefits and authorize the payment of benefits from multiemployer plan assets and therefore suffer from an inherent structural conflict of interest.

68.    These Defendants have breached their fiduciary duties in violation of 29 U.S.C.

§§404, 409(a), and 1132(a)(2) and/or (3) in performing their fiduciary functions, *inter alia*, by:

a.      Encouraging, through their agent or representative Trustee O'Donnell, who acted with apparent authority and in accordance with past practices of the Plan, Mr. Rees to enter into an agreement at the June Meeting, under which Mr. Rees fulfilled the hours of service requirement for a Special Retirement as of July 31, 2012;

b.      Inducing Mr. Rees, based upon that disclosure and agreement, to separate from service with Metro prior to October 1, 2012, rather than accumulating 870 hours of service in the May through September 2012 timeframe so that he could then enter pay status under a Special Retirement as of October 1, 2012, prior to the illegal amendment of the 2010 Plan purporting to eliminate the Special Retirement benefit except for participants drawing down that benefit prior to November 1, 2012;

c.      Notifying Mr. Rees only after the 2012 Plan year had ended that, although the Plan had accepted the documentation  from Metro as agreed at the June Meeting and had ratified the agreement reached at the June Meeting by approving Mr. Rees's Special Retirement effective August 1, 2012, Defendants were suspending his monthly pension benefit for lack of documentation so that he was ineligible for retirement as of August 1, 2012;

d.      Failing to disclose that these Defendants were no longer following the past practices of the Plan and depriving Mr. Rees of the opportunity to obtain 870 hours of service during the 2012 Plan year prior to the date of adoption of, or the effective date of, the illegal 2012 amendment to the 2010 Plan purportedly eliminating the Special Retirement benefit for participants who were not in pay status prior to November 1, 2012;

e.      Imprudently and impermissibly investing plan assets in high-risk foreign investments in violation of their ERISA duties of prudence and loyalty;

f.      Attempting to minimize their own risk of personal liability for investment losses that the Plan suffered (including but not limited those due to high-risk foreign investment) in violation of their duties of loyalty and exclusivity by reducing benefits, including but not limited to by revoking Mr. Rees's Special Retirement and by failing to accord him the minimum benefit accrued as of September 30, 2003;

g.      Failing to administer the January 2010 Plan in accordance with its terms in violation of ERISA §404(a)(1)(D), 29 U.S.C. §1104(a)(1)(D);

h.      Failing to provide the requisite notice for a retroactive amendment of purported "adjustable benefits" offered through a multiemployer plan;

i.      Demanding that Mr. Rees repay the benefit "overpayment" caused by these Defendants' subsequent repudiation of the agreement between Mr. Rees, Mr. Buckle and Trustee O'Donnell;

j.      Failing to accord Mr. Rees a minimum benefit under Section 5.1(e) of the 2010 Plan offset the supposed benefit "overpayment" by the amount of underpayment of Mr. Rees's minimum benefit; and

k.      Burdening Plaintiff Wendy Rees with the repayment of the benefit "overpayment" should Mr. Rees die from his medical condition prior to the full and complete repayment of the supposed "overpayment."

69.     As ERISA fiduciaries, these Defendants have breached these fiduciary duties in violation of 29 U.S.C. §§404(a) and 1132(a)(2) and/or (3) and their duty to avoid conflicts of interest in performing their fiduciary functions, and have acted in their own self-interest or in the interest of third parties other than participants or beneficiaries of the Plan.

70.     The foregoing fiduciary breaches have caused resulting harm to Plan

participants, including Plaintiffs, including but not limited to inducing Mr. Rees to retire prematurely to his detriment, interfering with his Special Retirement benefits, and burdening Plaintiffs with alleged overpayments in excess of $75,000.

WHEREFORE, pursuant to ERISA §§502(a)(2) and/or (3), 29 U.S.C. §§1132(a)(2) and/or (3), Plaintiffs request that this Honorable Court enter Judgment in favor of Plaintiffs on this claim for fiduciary breaches and enter an Order a) compelling these Defendants to cease and desist from investing in high-risk foreign investments and to disgorge such investments from the Plan; **b)** compelling these Defendants to cease and desist offsetting financial losses to the Plan from their poor fiduciary investments by attempting to enforce the purported December 12, 2012 illegal amendment reducing accrued benefits to certain participants, including Mr. Rees declaring in bad faith that Mr. Rees was and is ineligible for Special Retirement; **c)** estopping these Defendants from enforcing the illegal amendment (including through the Plan's suspension of benefit provisions) as to all affected participants under the Plan, including but not limited to Mr. Rees; **d)** reinstating Mr. Rees's Special Retirement benefit effective August 1, 2012 in the correct amount as provided under Section 5.1(e) of the Plan; **e)** reinstating all participants' benefits illegally reduced by the purported December 12, 2012 amendment; **f)** assessing a surcharge against these Defendants in the amounts of Plan losses due to high-risk foreign investments; **g)** assessing a surcharge against these Defendants in the amounts of purported "overpayments" of all participants' benefits revoked by these Defendants by means of illegal plan amendment or otherwise, including but not limited to Mr. Rees's Special Retirement; **h)** awarding Plaintiffs and all other participants whose benefits were so wrongfully revoked or reduced interest on the amount of those benefits to compensate Plaintiffs and other participants for the delay in the receipt of Special Retirement benefits or other benefits so wrongfully suspended or cut back; **i)**

compelling Defendant Trustees to cease and desist from any collection efforts or efforts to offset Plaintiffs' and all other affected participants' future pension benefits by the alleged "overpayment" amounts; **j)** declaring that Plaintiffs and all other affected participants do not owe any repayment of benefits in any amount to the Plan; i) awarding Plaintiffs their costs,  expenses and reasonable attorneys' fees pursuant to ERISA §502(g), 29 U.S.C. §1132(g); and **k)** awarding such other relief, including such "other appropriate equitable relief" as provided for under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), as this Court may deem equitable, just and fair.

**COUNT IV –**
**VIOLATION OF ERISA §510 AGAINST ALL DEFENDANTS**

71.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if set forth  fully herein.

72.     ERISA §510, 29 U.S.C. §1140, provides that it is unlawful for any person to discharge, suspend or "discriminate against" a participant or benefit for opposing any violation of Title I of ERISA or for exercising any right to which he is entitled under an employee benefit plan or for the purpose of interfering with the attainment of any right to which such participant may become entitled under an employee benefit plan.

73.     ERISA §510, 29 U.S.C. §1140, also provides that it is unlawful to discharge, suspend, or otherwise "discriminate against" a participant or beneficiary for opposing any violation of the provisions of "this title" of ERISA, including but not limited to a participant's right to oppose fiduciary breaches by questioning the propriety and prudence of investments in high-risk foreign bonds made by fiduciaries in violation of ERISA §404(a).

74.     Defendants fall within the definition of "person" under ERISA §510.

75.     With the specific intent of interfering with Mr. Rees's attainment of a Special Retirement as of August or October 1, 2012, or at any time in the future, and in violation of this

provision of ERISA §510, Defendants, *inter alia*:

a.       Induced Mr. Rees to separate from his employment with Metro under a Special Retirement, and induced Metro to terminate Mr. Rees's employment prior to October 1, 2012 when he would have completed at least 870 hours of service with the 2012 Plan year, based upon the agreement reached at the June Meeting;

b.       Discriminated against Mr. Rees by violating the Plan's past practices of awarding "Hours of Service" for hours of "back pay" agreed to by contributing employers, and by not crediting such hours, for which Mr. Rees was entitled to payment but had not yet been paid of that June Meeting, to Mr. Rees for purposes of his eligibility for the Special Retirement;

c.       Retaliated and/or discriminated against Mr. Rees by repudiating the agreement and by revoking his Special Retirement after the end of the 2012 Plan year so that he was precluded from earning additional hours of service toward a Special Retirement prior to November 1, 2012;

d.       Retaliated and/or discriminated against Mr. Rees, whose medical condition and need for health care insurance of which some or all of these Defendants were well aware, by interfering with his Special Retirement and with his retiree health care insurance and by forcing him to return to employment to his physical detriment;

e.       Retaliated and/or discriminated against Mr. Rees by disqualifying him from Special Retirement and demanding repayment of an alleged "overpayment" by Mr. Rees, and by Plaintiff Wendy Rees should he not survive long enough to repay the alleged "overpayment"; and

f.       Retaliated and/or discriminated against Mr. Rees by revoking and suspending his Special Retirement a short time after he challenged and opposed high-risk foreign investments of the Plan's assets by the fiduciary Defendants.

76.       Defendants retaliated against Mr. Rees and notified him of the revocation of his

Special Retirement only after he had complained of fiduciary misconduct, and only after the Defendants had illegally amended the Plan to eliminate that benefit.

WHEREFORE, pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), Plaintiffs request that this Honorable Court **a)** enter Judgment in favor of Plaintiffs on this claim for violation of ERISA §510; **b)** enter an Order *(1)* declaring that Mr. Rees fulfilled the 870 hours of credited service requirement for the 2012 Plan Year as of July 31, 2012 and reinstating his Special Retirement benefit effective August 1, 2012, together with interest thereon, or *(2)* declaring that Mr. Rees will be credited with 22 weeks of 40 hours of service per week from May 1, 2012 through September 30, 2012 plus back pay and other compensatory damages as if he were in Metro's employ throughout that period and reinstating Mr. Rees's Special Retirement benefit effective October 1, 2012, together with interest thereon; and **c)** enter an Order declaring that Plaintiffs owe Defendant Plans no purported "overpayments," estopping Defendants from enforcing any terms of the Plan to the contrary (including but not limited to the illegal amendment to the 2010 Plan eliminating that benefit), and awarding Plaintiffs their costs, expenses and reasonable attorneys' fees pursuant to ERISA §502(g), 29 U.S.C. §1132(g), and such other relief as this Court may deem equitable, just and fair.

## COUNT V –
## VIOLATION OF ERISA §204(g)
## AGAINST ALL DEFENDANTS EXCEPT METRO

77.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if set forth fully herein.

78.   ERISA §204(g)(1), 29 U.S.C. §1054(g)(1), provides: "The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan."

79.   ERISA §204(g)(2), 29 U.S.C. §1054(g)(2), provides that "a plan amendment which

has the effect of – (A) eliminating or reducing an early retirement benefit or a retirement-type

subsidy (as defined in regulations), or (B) eliminating an optional form of benefit, with respect to

benefits attributable to service before the amendment shall be treated as reducing accrued benefits."

80.     In response to Mr. Rees's indication that he would work until September 30, 2012

and then retire from Metro with a Special Retirement effective October 1, 2012, these Defendants

(themselves or through their agents or delegatees) induced Mr. Rees into believing that he had

accumulated sufficient hours of service in his thirtieth year of employment with Metro (*i.e.,* the

2012 Plan year) and thus to retire from employment with Metro under the Plan with a Special

Retirement benefit, effective August 1, 2012.

81.     Only after the 2012 Plan year had ended and after these Defendants had purportedly

amended the Plan in order to eliminate the Special Retirement did these Defendants repudiate the

agreement reached by Mr. Rees, his employer and Trustee O'Donnell at the June Meeting.

82.     By waiting until after the operational effective date of the amendment, after adoption

of the amendment, and after the Plan year had ended to discredit the agreement reached at the June

Meeting, these Defendants not only violated the Plan's internal procedures, but they also cut back

and/or eliminated an accrued benefit of Plaintiffs in violation of ERISA §204(g), an accrued benefit

that was not amended as of October 1, 2012.

83.     Pursuant to ERISA §502(a)(3), Plaintiffs are entitled to appropriate equitable relief to

redress Defendants' violation of ERISA §204(g).

WHEREFORE, pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), Plaintiffs request

that this Honorable Court enter Judgment in favor of Plaintiffs on this claim for violation under

the anti-cutback rule in ERISA §204(g)(1) and/or (2) and enter an Order **a)** declaring that Mr.

Rees fulfilled the 870 hours of credited service requirement during the 2012 Plan Year as of July

31, 2012; **b)** reinstating Mr. Rees's Special Retirement benefit effective August 1, 2012 in the correct amount, together with interest on the appropriate amount to compensate Mr. Rees for the delay in payment; **c)** estopping Defendants from enforcing any terms of the Plan to the contrary; **d)** declaring that Plaintiffs do not owe any repayment of benefits in any amount to the Plan; and awarding Plaintiffs their costs, expenses and reasonable attorneys' fees pursuant to ERISA §502(g), 29 U.S.C. §1132(g); and **e)** awarding such other relief, including such "other appropriate equitable relief" as provided for under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), as this Court may deem equitable, just and fair., and such other relief as this Court may deem equitable, just and fair.

**COUNT VI –**
**CLAIM FOR CO-FIDUCIARY BREACH IN VIOLATION OF ERISA §405**
**AGAINST ALL DEFENDANTS EXCEPT DEFENDANTS PLAN AND METRO**

84.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if set forth fully herein.

85.    At all relevant times hereto, the Defendant Boards, the Defendant Trustees and the Defendant Fund Administrator, the John Doe Defendants serving as predecessor or successor Board trustees, and their respective agents and delegatees are and were ERISA fiduciaries of the Plan and Funds, as provided in the Trust Agreement and the Plan documents, and/or are *de facto* ERISA fiduciaries within the meaning of 29 U.S.C. §1002(21)(A) because they exercised discretionary authority or control respecting management and/or administration of the Plan and Funds and/or because they exercised authority or control respecting management and disposition of the plan assets of the Plans and Funds.

86.    Under ERISA §405, 29 U.S.C. §1105, as enforced through ERISA §§502(a)(2) and/or (3), 29 U.S.C. §§1132(a)(2) and/or (3), ERISA fiduciaries are liable for the breach of duty of co-fiduciary if the fiduciary knowingly participates in a fiduciary breach, enables another fiduciary

to commit a breach, or has knowledge of a co-fiduciary's breach but does not take reasonable steps to remedy the breach.

87.     In violation of ERISA §405, some or all of these Defendants knowingly participated in fiduciary breaches in violation of their fiduciary duties under ERISA §§404(a) and 409(a), 29 U.S.C. §§ 1104(a) and 1109, and/or enabled another fiduciary to commit such breaches, and/or had knowledge of the other fiduciary's breaches but did not take reasonable steps to remedy the breaches, by, among other things:

a.     Encouraging, through their agent or representative Trustee O'Donnell, who acted with apparent authority and in accordance with past practices of the Plan, Mr. Rees to enter into an agreement at the June Meeting, under which Mr. Rees fulfilled the hours of service requirement for a Special Retirement as of July 31, 2012;

b.     Inducing Mr. Rees, based upon that disclosure and agreement, to separate from service with Metro prior to October 1, 2012, rather than accumulating 870 hours of service in the May through September 2012 timeframe so that he could then enter pay status under a Special Retirement as of October 1, 2012, prior to the illegal amendment of the 2010 Plan purporting to eliminate the Special Retirement benefit except for participants drawing down that benefit prior to November 1, 2012;

c.     Notifying Mr. Rees only after the 2012 Plan year had ended that, although the Plan had accepted the documentation from Metro as agreed at the June Meeting and had ratified the agreement reached at the June Meeting by approving Mr. Rees's Special Retirement effective August 1, 2012, Defendants were suspending his monthly pension benefit for lack of documentation so that he was ineligible for retirement as of August 1, 2012;

d.     Failing to disclose that these Defendants were no longer following the past practices

of the Plan and depriving Mr. Rees of the opportunity to obtain 870 hours of service during the

2012 Plan year prior to the date of adoption of, or the effective date of, the illegal 2012 amendment

to the 2010 Plan purportedly eliminating the Special Retirement benefit for participants who were

not in pay status prior to November 1, 2012;

     e.     Imprudently and impermissibly investing plan assets in high-risk foreign investments

in violation of their ERISA duties of prudence and loyalty;

     f.     Attempting to minimize their own risk of personal liability for investment losses that

the Plan suffered (including but not limited those due to high-risk foreign investment) in violation

of their duties of loyalty and exclusivity by reducing benefits, including but not limited to by

revoking Mr. Rees's Special Retirement and by failing to accord him the minimum benefit accrued

as of September 30, 2003;

     g.     Failing to administer the January 2010 Plan in accordance with its terms in violation

of ERISA §404(a)(1)(D), 29 U.S.C. §1104(a)(1)(D);

     h.     Failing to provide the requisite notice for a retroactive amendment of purported

"adjustable benefits" offered through a multiemployer plan;

     i.     Demanding that Mr. Rees repay the benefit "overpayment" caused by these

Defendants' subsequent repudiation of the agreement between Mr. Rees, Mr. Buckle and Trustee

O'Donnell;

     j.     Failing to accord Mr. Rees a minimum benefit under Section 5.1(e) of the 2010 Plan

offset the supposed benefit "overpayment" by the amount of underpayment of Mr. Rees's minimum

benefit; and

     k.     Burdening Plaintiff Wendy Rees with the repayment of the benefit "overpayment"

should Mr. Rees die from his medical condition prior to the full and complete repayment of the

supposed "overpayment" that was not owed; and

l.      Denying Mr. Rees's claim seeking the restoration of his Special Retirement in bad faith.

WHEREFORE, pursuant to ERISA §§502(a)(2) and/or (3), 29 U.S.C. §§1132(a)(2) and/or (3), Plaintiffs request that this Honorable Court enter Judgment in favor of Plaintiffs on this claim for fiduciary breaches and enter an Order a) compelling these Defendants to cease and desist from investing in high-risk foreign investments and to disgorge such investments from the Plan; **b)** compelling these Defendants to cease and desist offsetting financial losses to the Plan from their poor fiduciary investments by attempting to enforce the purported December 12, 2012 illegal amendment reducing accrued benefits to certain participants, including Mr. Rees declaring in bad faith that Mr. Rees was and is ineligible for Special Retirement; **c)** estopping these Defendants from enforcing the illegal amendment (including through the Plan's suspension of benefit provisions) as to all affected participants under the Plan, including but not limited to Mr. Rees; **d)** reinstating Mr. Rees's Special Retirement benefit effective August 1, 2012 in the correct amount as provided under Section 5.1(e) of the Plan; **e)** reinstating all participants' benefits illegally reduced by the purported December 12, 2012 amendment; **f)** assessing a surcharge against these Defendants in the amounts of Plan losses due to high-risk foreign investments; **g)** assessing a surcharge against these Defendants in the amounts of purported "overpayments" of all participants' benefits revoked by these Defendants by means of illegal plan amendment or otherwise, including but not limited to Mr. Rees's Special Retirement; **h)** awarding Plaintiffs and all other participants whose benefits were so wrongfully revoked or reduced interest on the amount of those benefits to compensate Plaintiffs and other participants for the delay in the receipt of Special Retirement benefits or other benefits so wrongfully suspended or cut back; **i)**

compelling Defendant Trustees to cease and desist from any collection efforts or efforts to offset Plaintiffs' and all other affected participants' future pension benefits by the alleged "overpayment" amounts; **j)** declaring that Plaintiffs and all other affected participants do not owe any repayment of benefits in any amount to the Plan; i) awarding Plaintiffs their costs, expenses and reasonable attorneys' fees pursuant to ERISA §502(g), 29 U.S.C. §1132(g); and **k)** awarding such other relief, including such "other appropriate equitable relief" as provided for under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), as this Court may deem equitable, just and fair.

### COUNT VII –
### FEDERAL COMMON-LAW EQUITABLE ESTOPPEL AGAINST ALL DEFENDANTS EXCEPT METRO

88.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if set forth  fully herein.

89.     Through the representations of Trustee O'Donnell and the Fund Administrator and/or their agents or delegatees, with apparent authority to represent the Defendant Boards and the Defendant Funds and Plan, these Defendants made and/or ratified representations of material fact to Mr. Rees relating to the hours of service with which he would be credited in order to obtain his thirtieth year of service and thus become eligible for a Special Retirement prior to August 1, 2012 (without continuing in Metro's employ through September 30, 2012) and prior to the amendment of the 2010 Plan to eliminate that benefit for those participants not in pay status as of November 1, 2012.

90.     These Defendants made or ratified these material representations with the intent that Mr. Rees rely upon them, in bad faith and/or with no present intent of acting in conformity therewith in the future.

91.     These Defendants made or ratified these materials representations with knowledge of

the true facts that they would repudiate such representations and the agreement reached at the June Meeting.

92.     These Defendants made or ratified these material representations to Mr. Rees, upon information and belief, knowing that the retroactive amendment on which they would rely to reduce Special Retirement benefits and other "adjustable benefits" of Mr. Rees and other participants had been untimely disseminated.

93.     Defendants made or ratified these material representations in bad faith and with knowledge of the true facts that they would repudiate the Special Retirement and revoke the agreement reached at the June Meeting only after Mr. Rees could no longer accumulate hours of service required to fulfill the service requirements for such subsidized early retirements.

94.     Mr. Rees reasonably relied upon these representations of material fact about his fulfillment of the pension eligibility requirements made by a Plan/Fund Trustee and the Fund Administrator and was unaware of the true facts that Defendants would repudiate Trustee O'Donnell's representations, Defendants' past practices, the agreement reached at the June Meeting, the Defendants' prior acceptance of the documentation supplied by Metro, and their prior approval of Mr. Rees's Special Retirement effective August 1, 2012.

95.     Mr. Rees relied upon the representations to his detriment by retiring effective August 1, 2012, rather than retiring effective October 1, 2012.

96.     Had Mr. Rees continued to work 40 hours for the 22 weeks between May 1, 2012 and September 30, 2012, he would have earned more than 870 hours of service and would have fulfilled the service requirement without the "banked hours" that were the subject of the agreement entered into at the June Meeting.

97.     Defendants' belated repudiations of the representations of material fact caused Mr.

Rees harm because he could no longer earn credited service in his 30th year prior to the amendment of the 2010 Plan that eliminated the Special Retirement for participants not in pay status before November 1, 2012.

98.     Moreover, Defendants' belated repudiations of the representations deprived Plaintiffs of the benefits of the Special Retirement benefit purportedly eliminated from the Plan by a retroactive amendment adopted in December of 2012, even though these Defendants

99.     Under these extraordinary circumstances, these Defendants should be equitably estopped from enforcing the illegal amendment and from denying Mr. Rees the greater of the Special Early Retirement as it existed prior to the illegal amendment or the minimum benefit set forth in Section 5.1(e).

WHEREFORE, Plaintiffs request that this Honorable Court enter Judgment in favor of Plaintiffs on this federal common-law equitable estoppel claim and enter an Order **a)** declaring that Mr. Rees had fulfilled the 870 hours of service requirement during the 2012 Plan Year as of July 31, 2012; **b)** reinstating Mr. Rees's Special Retirement benefit effective August 1, 2012, or awarding Plaintiffs the "minimum benefit" provided in Section 5.1(e) of the 2010 Plan together with interest thereon; **c)** equitably estopping Defendants from enforcing the illegal amendment retroactively enacted on December 12, 2012, and any other terms of the 2010 Plan or the 2013 Plan that would otherwise deprive Mr. Rees of the Special Retirement benefit; **d)** declaring that Plaintiffs do not owe any repayment of benefits in any amount to the Plan; and **e)** awarding such other relief as this Court may deem equitable, just and fair.

STEVENSON KEPPELMAN ASSOCIATES

By:    */s/* Diane M. Soubly_____
        Diane M. Soubly
        444 S. Main
        Ann Arbor MI 48104
        Phone: (734) 747-7050
        Email: dsoubly@skalaw.com

        ***Attorneys for Plaintiffs***

Dated:  October 31, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of October, 2014, the foregoing document was filed with the clerk of the United States District Court for the Eastern District of Michigan via the Court's ECF system, was served on all counsel of record for the parties (all ECF filers) via the Court's ECF system, and was served via email by consent upon new counsel for Defendant Metro Industrial Contracting, Inc., and by mailing by first-class US mail to said counsel, Robert L. Goldenbogen, at:

        Garan Lucow Miller P.C.
        511 Fort Street, Suite 500
        Port Huron MI 48060

        s/ Diane M. Soubly_____
        Diane M. Soubly